**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| TANYA BACA,<br><br>Plaintiff,<br><br>v.<br><br>FLORIDA HOSPITAL PHYSICIAN GROUP, INC. d/b/a ADVENTHEALTH MEDICAL GROUP,<br><br>Defendant. | Case No. 6:26-cv-2407<br><br>Plaintiff Demands Trial By Jury |

## COMPLAINT

Plaintiff, by and through her attorney, Daniel I. Schlade complaining of the Defendant, alleges and says:

## PARTIES

**1.** Plaintiff Tanya Baca is an individual woman and resident of the State of Florida.

**2.** Plaintiff is Latina and has a Latina racial designation.

**3.** Defendant Florida Hospital Physician Group, Inc. d/b/a AdventHealth Medical Group ("Defendant" or "Advent") is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located in Florida.

**4.** Defendant is in the business of operating hospitals and medical practices throughout Florida.

**5.** At all times relevant to this Complaint, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., engaged in an industry affecting commerce and employing fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

**6.** At all times relevant to this Complaint, Defendant was an employer covered by the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq.

**JURISDICTION AND VENUE**

**7.** This Court has subject-matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this action arises under the Constitution and laws of the United States.28 USCS § 1331, 28 USCS § 1343.

**8.** This Court has subject-matter jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3), which grants federal district courts jurisdiction over actions brought under Title VII.42 USCS § 2000e-5.

**9.** This Court has supplemental jurisdiction over any state-law claim allaged by Plaintiff pursuant to 28 U.S.C. § 1367(a).

**10.** Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), as the unlawful employment practices alleged herein occurred in the Middle District of Florida. 42 USCS § 2000e-5.

**11.** On August 4, 2026, the Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue letter.

**12.** This action is timely filed within ninety days of Plaintiff's receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

**Plaintiff's Qualifications and Employment:**

**13.** Plaintiff is a Certified Nurse-Midwife, an Advanced Practice Registered Nurse that specializes in women's reproductive health, pregnancy, and childbirth.

**14.** Plaintiff is a board certified Psychiatric Mental Health Nurse Practitioner, licensed to assess, diagnose, and treat mental health and substance abuse conditions.

**15.** Plaintiff is an Advanced Practice Registered Nurse, which requires a minimum of a master's degree in nursing, and APRNs are authorized to diagnose illnesses, interpret tests, and prescribe medications.

**16.** Plaintiff is a Doctor of Nursing Practice, which represents the highest level of academic and clinical education a nurse can achieve.

**17.** Plaintiff entered into a written employment contract with Defendant on or about August 17, 2023, and her first day of work was on or about September 11, 2023. She was hired to provide services at Advent's OB/GYN department at its Ocala, Florida location (the "Ocala OB/GYN Department")

**18.** Throughout the majority of Plaintiff's tenure with Defendant, she was the sole Latina Certified Nurse-Midwife and provider with her level of expertise and management experience.

**19.** Pursuant to her contract with Defendant, Plaintiff possessed both managerial and medical responsibilities and was tasked with a leadership role over other Certified Nurse-Midwives.

**20.** From the beginning of her employment, Plaintiff was tasked with interviewing candidates for both Certified Nurse-Midwife and physician positions.

**21.** After approximately one year, Plaintiff's leadership and managerial duties were expanded, and Plaintiff became responsible for managing other junior Certified Nurse-Midwives, including overseeing their work and managing their schedules.

**22.** Plaintiff was also required to review approved paid time off for Certified Nurse-Midwives and incorporate it into their schedules.

**23.** At all relevant times, Plaintiff managed these duties effectively, readily, and without complaint from Defendant's management or the junior Certified Nurse-Midwives she was managing.

**24.** Plaintiff's managerial duties included balancing provider availability, staffing seniority, necessary continuity of care for patients, general operational needs, and approved paid time off for workers.

**25.** In addition to her employment with Defendant, Plaintiff is a professor at Frontier Nursing University, where she teaches courses for prospective nurses.

**26.** Plaintiff also treats patients with mental health conditions and substance abuse disorders through her own practice, Oceana Wellness and Psychiatry.

**27.** Defendant had full knowledge of Plaintiff's other professional responsibilities, and Plaintiff's schedule at Advent was tailored by Plaintiff and Defendant to accommodate her professional responsibilities to Defendant and her other outside professional endeavors.

**Dr. Martin's Discriminatory Conduct and Harassment:**

**28.** Dr. Terrell Martin is a physician employed by Defendant, with a specialty in Obstetrics and Gynecology, and he works at Defendant's Ocala OB/GYN Department..

**29.** Dr. Martin is a Black male.

**30.** Approximately eight months into Plaintiff's tenure with Defendant, Dr. Martin became involved with her department, and Plaintiff began experiencing harassment and discriminatory conduct based on her gender and national origin.

**31.** Dr. Martin informed Defendant's leadership that Plaintiff should not be managing Certified Nurse-Midwife scheduling, despite the fact that Plaintiff had successfully been managing Certified Nurse-Midwives and their schedules for over eight months without complaint or problems.

**32.** Dr. Martin informed Defendant's leadership that someone with an M.D. should handle the scheduling, which given the staffing at Defendant meant a male M.D. would be handling staffing.

**33.** Plaintiff attempted to confront Dr. Martin regarding these practices, and in response Dr. Martin referred to Plaintiff as a "fiery Latina."

**34.** The "fiery Latina" comment invoked a harmful stereotype commonly directed towards Latina women, specifically that they act with emotion and not common sense.

**35.** This stereotype is particularly harmful in a white-collar medical professional setting, where employees, particularly licensed medical professionals, are expected to govern their conduct with logic and close adherence to established procedures.

**36.** Dr. Martin thereafter took an adverse action against Plaintiff by unilaterally changing Plaintiff's long-standing schedule, which had previously been approved by Defendant's management and leadership.

**37.** The change in Plaintiff's schedule was not a mere matter of personal inconvenience but adversely impacted her ability to perform her outside professional responsibilities.

**38.** Dr. Martin's alteration of Plaintiff's schedule was done in retaliation against Plaintiff for her complaints about his discriminatory treatment.

**Dr. Linneman's Discriminatory Conduct and Harassment:**

**39.** Dr. Tycie Linneman is a physician employed by Defendant, with a specialty in Obstetrics and Gynecology, and he works in Defendant's OB/GYN department at its Ocala, Florida location.

**40.** Dr. Linneman is a white male.

**41.** Throughout Plaintiff's tenure with Defendant, Dr. Linneman created and fostered a hostile and discriminatory environment.

**42.** Dr. Linneman repeatedly made comments about Plaintiff's appearance and body, and these comments were often made in front of Plaintiff's coworkers.

**43.** Dr. Linneman's comments were often to the effect that Plaintiff was "too skinny" or "skin and bones."

**44.** On one occasion, while making these comments, Dr. Linneman placed his hands on Plaintiff's shoulders in front of other employees of Defendant.

**45.** This touching was unwanted by Plaintiff.

**46.** During another subsequent comment, Dr. Linneman said to Plaintiff, "you better not lose any more weight."

**47.** Dr. Linneman knew that Plaintiff had previously struggled with weight gains and obesity and that she was on prescribed Glucagon-Like Peptide-1, commonly known as GLP-1s, in order to help her manage her weight.

**48.** Dr. Linneman did not make such comments to similarly situated male employees in Defendant's workplace.

**49.** These comments by Dr. Linneman were particularly harmful because Plaintiff was exposed to unwanted and embarrassing comments and touchings related to her appearance, often in front of coworkers. Female workers are often subjected to beauty standards that are not applied to male employees, and Dr. Linneman contributed to this double standard by engaging in such conduct. These comments by Dr. Linneman were severe and pervasive.

**50.** The comments plus the unwanted touching was particularly embarrassing considering the professional context, the level of management and expertise attained by Plaintiff, and that it was done in front of her coworkers.

**51.** Plaintiff complained to Dr. Martin about his treatment of her.

**52.** Plaintiff had previously complained about Dr. Linneman's treatment as well.

**Plaintiff's Termination:**

**53.** On April 1, 2026, Plaintiff was terminated by Defendant.

**54.** Plaintiff was advised by letter that her termination was "without cause," meaning: she did not engage in any conduct causing her termination or warranting a termination of employment; and/or she did not engage in any conduct that violated the terms of her employment contract with Defendant.

**55.** In actuality, Plaintiff's termination was for discriminatory reasons.

**56.** As a result of Plaintiff's complaints about Dr. Martin's and Dr. Linneman's treatment, these physicians in management positions deemed her a problem employee, and her employment was terminated.

**57.** The discriminatory intent was evidenced by Defendant’s post termination conduct. Specifically, after her termination, Plaintiff was advised by Advent personnel at the Ocala OB/GYN Department that she was eligible for rehire at different divisions of Advent, since she was terminated “without cause”.

**58.** In the aftermath of Plaintiff’s termination by Advent, she applied for both permanent positions and “locum” temporary staffing positions at other Advent departments.

**59.** When Plaintiff applied for these positions, she was advised by the hiring staff for those positions that she was not eligible for rehire until “upper leadership”

at Advent approved her for rehire, in contradiction to prior statements made to her. To date, “upper leadership” has not granted any such approval, and Advent has declined to hire Baca for any other permanent or temporary positions. Plaintiff has even applied for completely different positions in completely different departments as a psychiatric-mental health nurse practitioner, and those applications have been declined as well.

**60.** The failure to re-employ Plaintiff is particularly harmful, since Defendant is one of the largest medical providers in the state of Florida. Advent employs over 37,000 individuals in Florida, and has hospitals and medical practices throughout the state. As a result it is one of the dominant players in this industry and it has a near monopoly. Consequently, the failure to rehire Plaintiff in cany capacity has virtually frozen her out of employment in the Florida market.

**61.** There is no justification for denying re-employment of Plaintff, apart from discriminatory conduct, since Plaintiff's termination was "without cause."

**62.** Plaintiff has been attempting to mitigate her damages, and she has repeatedly applied to jobs, including positions at other Defendant locations and third-party companies that staff Defendant's hospitals and facilities.

**63.** To date, none of these job applications have resulted in any job offers or new replacement employment.

**Damages**

**64.** As a result of Defendant's actions, Plaintiff has felt humiliated, degraded, victimized, embarrassed, and emotionally distressed.

**65.** Plaintiff has suffered severe financial damages and distress as a result of her termination of employment. Her loss of wages exceeds $10,750 per month from July 1, 2026 through the present.

**66.** Plaintiff is currently receiving medical treatment for the resultant emotional distress and trauma.

**67.** As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**68.** Plaintiff has further experienced severe emotional and physical distress.

**COUNT I — HOSTILE WORK**
**ENVIRONMENT IN VIOLATION OF TITLE VII**

**69.** Plaintiff incorporates paragraphs 1 through 68 as if fully set forth herein.

**70.** Defendant discriminated against Plaintiff on the basis of her sex and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

**71.** Defendant, through Dr. Martin and Dr. Linneman, subjected Plaintiff to severe and pervasive harassment based on her gender/sex and national origin.

**72.** Dr. Martin referred to Plaintiff as a "fiery Latina," invoking a harmful stereotype commonly directed towards Latina women.

**73.** Dr. Martin informed Defendant's leadership that Plaintiff should not be managing Certified Nurse-Midwife scheduling because someone with an M.D. should handle scheduling, despite Plaintiff's successful performance of those duties for over eight months.

**74.** Dr. Linneman repeatedly made unwanted comments about Plaintiff's appearance and body, often in front of her coworkers, which he did not make to similarly situated male employees.

**75.** Dr. Linneman placed his unwanted hands on Plaintiff's shoulders while making comments about her body in front of other employees.

**76.** The harassment was based on Plaintiff's sex as a woman and her national origin as a Latina.

**77.** The harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

**78.** Defendant knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

**79.** As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

## COUNT II — DISCRIMINATORY TERMINATION IN VIOLATION OF TITLE VII

**80.** Plaintiff incorporates paragraphs 1 through 68 as if fully set forth herein.

**81.** Defendant discriminated against Plaintiff on the basis of her sex and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

**82.** Defendant terminated Plaintiff's employment on April 1, 2026.

**83.** Plaintiff's termination was based on her sex as a woman and her national origin as a Latina.

**84.** Plaintiff complained to Dr. Martin about his discriminatory treatment of her.

**85.** Plaintiff complained about Dr. Linneman's discriminatory treatment as well.

**86.** As a result of Plaintiff's complaints about the discriminatory treatment by Dr. Martin and Dr. Linneman, these physicians in management positions deemed her a problem employee, and her employment was terminated.

**87.** Defendant advised Plaintiff that her termination was "without cause," meaning she did not engage in any conduct causing her termination or warranting a termination of employment.

**88.** Defendant has declined to grant Plaintiff a letter of rehireability despite her termination being "without cause," further evidencing the discriminatory nature of her termination.

**89.** Plaintiff was qualified for her position and performed her duties effectively, readily, and without complaint from Defendant's management or the junior Certified Nurse-Midwives she was managing.

**90.** Plaintiff's termination constituted an adverse employment action.

**91.** Plaintiff's sex and national origin were motivating factors in Defendant's decision to terminate her employment.

**92.** As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages, lost benefits, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

**A.** A declaratory judgment that Defendant's conduct violated Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act;

**B.** An order enjoining Defendant from engaging in unlawful employment practices;

**C.** An order requiring Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for women and individuals of Latina national origin;

**D.** Compensatory damages for past and future pecuniary losses, including lost wages, lost benefits, and other financial losses;

**E.** Compensatory damages for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other non-pecuniary losses.42 USCS § 1981a.

**F.** Punitive damages.42 USCS § 1981a.

**G.** Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and Fla. Stat. § 760.11(5);

**H.** Pre-judgment and post-judgment interest as provided by law; and

**I.** Such other and further relief as the Court deems just and proper.

**Plaintiff**

**s/Daniel I. Schlade**
Attorney For Plaintiff - Lead Counsel
6232 N. Pulaski, #300
Chicago, IL 60646
773-550-3775
danschlade@gmail.com
daniel@dorelawoffices.com

## JURY DEMAND

Plaintiff demands a trial by jury.